[No. 43464.    En Banc.    June 12, 1975.]

ROBERT B. AYERS, *Appellant,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Respondent.*

*William E. Cullen, Jr.,* for appellant.

*Slade Gorton, Attorney General,* and *Joseph M. Littlemore* and *Gerald D. Kelly, Assistants,* for respondent.

WRIGHT, J.—This case involves the eligibility of appellant for unemployment benefits when he quit his temporary job

in Richland and moved to Olympia to join his wife who had recently secured permanent employment with the State of Washington. The issue for determination is whether there were sufficient compelling personal reasons to constitute "good cause" for appellant to quit his job. We answer in the affirmative and reverse the decision of the trial court.

In March 1972, appellant (Ayers) was discharged from the United States Air Force. He obtained seasonal employment with the C & M Landscaping Company in Richland. Mrs. Ayers was unable to find work in the Richland area and moved to Olympia where she obtained employment with the State of Washington as a clerk-typist II. Mr. Ayers' job with C & M Landscaping Company was seasonal and he would be laid off when the work season closed. He decided to quit early and move to Olympia to be with his wife. Because the distance between the Tri-Cities area and Olympia was about 250 miles, Mr. Ayers and his wife felt that they could neither afford to maintain two separate homes, nor to commute on a weekly basis; and they desired to keep their family together and maintain the marriage relationship. Unable to obtain employment in the Olympia area after looking, Mr. Ayers applied for unemployment benefits from the Department of Employment Security. Although Mr. Ayers' application indicated that his wife would be the primary support of the family, and that he planned to attend Centralia Junior College beginning on June 19, 1972, Mr. Ayers stated that he was, in fact, looking for full-time employment in the Olympia area and would not attend the college if he were able to find full-time employment. The matter of Mr. Ayers' desire to attend college was not given as a reason for his disqualification, it is not an issue in this litigation, and will not be considered further.

The Employment Security Department determined appellant ineligible for benefits. Appeal was made to a hearing tribunal which affirmed the decision. The commissioner affirmed the decision of the appeal tribunal finding that there was no compelling personal reason for petitioner to quit his job and that there was no factual data to show that

there would be destruction of the normal family relationship. The decision of the department was affirmed by the Superior Court and the matter was appealed to the Court of Appeals. The case was transferred to the Supreme Court.

RCW 50.20.050 disqualifies an individual from receiving unemployment benefits for up to 10 weeks if the applicant is determined to have "left work voluntarily without good cause." Although the statute does not specifically define "good cause" in any manner that is helpful in this situation, there is substantial help to be found in *In re Bale*, 63 Wn.2d 83, 385 P.2d 545 (1963). Therein the court speaking through Hunter, J. said in part at page 90: "[W]e hold 'good cause' for termination of employment, under the statute, may include compelling personal reasons." Further, in the same opinion, the court said at page 91: "The claimant in the instant case, having terminated her employment because of compelling personal reasons, did so with 'good cause' under RCW 50.20.050."

This case does not require any consideration of domicile, or of who shall select the domicile. For that reason we shall refrain from any discussion of domicile.

RCW 50.01.010, the preamble to Title 50, indicates that the purpose of the system of unemployment compensation is to relieve "economic insecurity" and to protect "against this greatest hazard of our economic life." The said section also provides for a liberal construction of Title 50.

Many factors may enter into the decision of a family as to where they shall live and work. It is often a substantial factor to be considered that it is desirable for numerous reasons to keep the family together. If employment for the husband and for the wife are not available in the same area, it is a compelling personal reason and, therefore, good cause for one of the spouses to leave employment and go to the place of employment of the other spouse in order to keep the family together. The decision as to which place of employment should be accepted must not be governed by any arbitrary rule, but should be decided upon a

consideration of all relevant factors. It is generally a decision which the spouses should make for themselves, subject to the need to make a reasonable decision.

In the present case the decision was reasonable. To have retained the husband's temporary employment for the short time such employment would have been available and thus to have foregone the opportunity for the wife to accept permanent employment, would have been unreasonable. Such a choice would very probably have resulted in two unemployed spouses rather than one.

We reverse the decision of the Superior Court and of the department, and remand the matter to the Employment Security Department for further proceedings consistent herewith.

STAFFORD, C.J., FINLEY, ROSELLINI, and HUNTER, JJ., and RUMMEL, J. Pro Tem., concur.

HAMILTON, J. (dissenting)—I dissent.

RCW 50.32.150[1] still provides that on judicial review of departmental decisions, the decision of the commissioner shall be deemed prima facie correct, and places the burden of proof upon the party attacking such decision. In addition, we noted in *Ancheta v. Daly*, 77 Wn.2d 255, 461 P.2d 531 (1969), that on appellate review of such decisions neither the appellate court nor the superior court is entitled to simply substitute its judgment for that of the administrative agency or ignore the expertise of that tribunal.

In the instant case, I fear the majority has ignored both of the foregoing tenets.

I do not disagree with the majority that the purpose of the unemployment compensation system is directed toward relieving "economic insecurity" and protecting "against this greatest hazard of our economic life." Nevertheless, the principal thrust of the system is aimed at the "economic

---

[1]RCW 50.32.150 provides in part:

"In all court proceedings under or pursuant to this title the decision of the commissioner shall be prima facie correct, and the burden of proof shall be upon the party attacking the same."

insecurity" of "involuntary" unemployment and the alleviation thereof. The temporary disqualification for benefits imposed upon "voluntary" unemployment by RCW 50.20.050 is consistent with the underlying purpose of the system, yet in keeping with a legislative effort to discourage indiscriminate job shopping and to thereby in some measure conserve the system's funds for the primary benefit of the involuntarily unemployed. RCW 50.20.050 should not, therefore, be so generously interpreted and/or liberally disregarded as to defeat its plain legislative objective.

What amounts to a compelling personal reason which will exonerate a claimant from the temporary disqualification imposed by RCW 50.20.050 is essentially a factual question to be resolved, virtually on a case-by-case basis. In *In re Bale*, 63 Wn.2d 83, 385 P.2d 545 (1963), we determined that the legal duty of a wife to follow her husband to the domicile of his choice constituted a compelling personal reason justifying the wife's voluntary termination of her employment, thereby relieving her of the impact of RCW 50.20.050. Whether the equal rights amendment (Const. art. 31, § 1 (amendment 61)) shattered *Bale* as a viable precedent is debatable. Nevertheless, I do not deem it necessary to undertake in this dissent to resolve that question, for I am satisfied that under the undisputed facts of this case no compelling personal reason for the claimant to quit his temporary employment has been established. In short, the claimant has failed to carry his burden of proof.

At the expense of some repetition, the essential facts as revealed by the record must be related. On March 19, 1972, the claimant left the United States Air Force and with his wife moved to Richland. The evidence is silent as to the nature of the living quarters the couple procured in Richland. The claimant, on April 8, 1972, obtained temporary and seasonal employment paying approximately $480 per month. This employment was as a laborer with a landscaping company which had gotten behind with its orders. The claimant was due to be laid off as soon as the company

gained currency or the landscaping season ended. In the meantime, the claimant's wife, desiring to pursue a career in social work, applied for and was tendered employment in Olympia as a clerk-typist II at a salary of $412 per month plus some fringe benefits. She was advised of the availability of this position approximately a week, before the claimant quit his job. During the course of this week, the claimant and his wife

> talked it over and we decided it would be better for me to quit my job and for her—for me to move over with her.

Based upon this mutual agreement, and without any kind of ultimatum from his wife, claimant quit his job on May 5, 1972, and, together with his wife, came to Olympia where his wife commenced her employment on May 8, 1972.

The principal reason assigned for claimant's action was that both he and his wife wished to be together and avoid the inconvenience of occasional trips between Richland and Olympia during the interval retention of his temporary employment would entail.

In our mobile society and economy it is not uncommon on change of employment sites or locations for families to be temporarily separated, all without adverse effect upon the family relationship. There is no evidence whatsoever in this case that the temporary separation which would have been involved would threaten the marriage, upset the domestic tranquility, or otherwise cause any unreasonable inconvenience. Neither is there any evidence that the couple had any children or, if they did, that the children would be adversely affected by a temporary separation. There is evidence, however, that the claimant simply desired to look for employment in the Olympia area or alternatively to enroll in college. Loss to the family coffers of the $480 monthly income, albeit temporary, seemingly did not influence his calculations.

Given the overall circumstances of this case, it appears the evidence clearly establishes that the claimant made a

deliberate, conscious, and voluntary decision to quit his job for reasons of personal convenience. Whether he made a wise decision is not before us. In any event, the evidence amply sustains the commissioner's ruling that he did not leave his temporary employment for compelling personal reasons within the contemplation of RCW 50.20.050. As did the Superior Court, I would accord the commissioner's ruling the prima facie correctness to which it is statutorily entitled and refrain from simply substituting my judgment for that of the administrative agency.

The judgment should be affirmed.

UTTER and HOROWITZ, JJ., concur with HAMILTON, J.