2013 COA 124

**YOTES, INC., Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Peter Z. Miller, Respondents.**

**Court of Appeals No. 12CA1047**

Colorado Court of Appeals,
Div. V.

Announced August 15, 2013

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24-51-1105, C.R.S. 2012.

Elwyn F. Schaefer & Associates, P.C., Elwyn F. Schaefer, Sara A. Green, Denver, Colorado, for Petitioner

John W. Suthers, Attorney General, Alice Q. Hosley, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office

No Appearance for Respondent Peter Z. Miller

Opinion by Judge CARPARELLI

¶ 1 In this unemployment compensation case, petitioner, Yotes, Inc. (employer), seeks review of a final order of the Industrial Claim Appeals Office (Panel) that reversed a hearing officer's decision and awarded unemployment compensation benefits to Peter Z. Miller (claimant) under section 8–73–108(4), C.R.S.2012. We set aside the order.

## I.  Background

¶ 2 Claimant, who worked as a sales associate for employer, had an intimate relationship with a coworker. After the relationship ended, the coworker persisted in initiating unwelcomed communication, and demanded that claimant take a paternity test to determine whether he had fathered her child.

¶ 3 On Saturday, October 8, 2011, claimant wrote a letter asking his supervisor to help stop the coworker from sexually harassing him in the workplace. On Tuesday, October 11, the supervisor called claimant to schedule a meeting to discuss his request, but the soonest they could meet was Friday, October 14. At the Friday meeting, claimant explained his concerns to the supervisor. The supervisor told claimant that he would be traveling out of town early the following week, but would meet with the coworker when he returned on Thursday, October 20. The supervisor authorized claimant to take a paid leave of absence and excused him from attending meetings at which the coworker would be present until the supervisor completed his investigation of the matter.

¶ 4 Later that day, the coworker called claimant on his cell phone. The next day, Saturday, October 15, claimant resigned. He asserted that employer typically addressed important business transactions within forty-eight hours, that his report of sexual harassment was of equal importance, that employer had not resolved the matter within forty-eight hours, and, therefore, employer was not taking the matter seriously.

¶ 5 The deputy for the Division of Employment and Training awarded claimant benefits based on a determination that working conditions could have been hazardous to claimant's physical or mental well-being, as provided for in section 8–73–108(4)(c), C.R.S.2012. Employer appealed. The hearing officer found that claimant quit because he believed that employer was not acting quickly enough. However, the hearing officer found that employer was taking the complaint seriously and claimant did not allow employer reasonable time to conduct an investigation and determine the appropriate action. Based on these and other findings, the hearing officer

concluded that the claimant was at fault for the separation and that a disqualification was warranted under section 8–73–108(5)(e)(XXII), C.R.S.2012. Claimant appealed.

¶ 6 The Panel reversed the hearing officer and awarded benefits to claimant. The Panel first relied on section 8–73–108(4)(*o*), C.R.S. 2012, which mandates an award of benefits to an employee who is separated from employment if the Division of Employment and Training determines that the employee quit "because of personal harassment *by the employer* not related to the performance of the job" (emphasis added). Saying that the statute does not define "employer," the Panel "decline[d] to limit 'employer' under [section] 8–73–108(4)(*o*) as [ ] only referring to individuals in a supervisory or management role or to an employer that condoned or permitted the harassment." Instead, it "interpret[ed] 'employer' to include coworkers," and explained that it was construing section 8–73–108(4)(*o*) "to further the legislative intent that unemployment insurance is for the benefit of persons unemployed through no fault of their own in cases where a worker quits due to personal harassment by coworkers." In support of its ruling, the Panel cited section 8–73–108(1)(a), C.R.S.2012, *Colorado Division of Employment & Training v. Hewlett*, 777 P.2d 704 (Colo.1989), and *Henderson v. RSI Inc.*, 824 P.2d 91 (Colo.App.1991).

¶ 7 The Panel also ruled that section 8–73–108(4)(c) permits an award of benefits based on unsatisfactory working conditions.

¶ 8 We now consider employer's appeal of the Panel's decision.

## II. Standard of Review

¶ 9 We may set aside the Panel's decision only when (1) the Panel acted without power or in excess of its powers; (2) the decision was procured by fraud; (3) the findings of fact do not support its decision; or (4) the decision is erroneous as a matter of law. *See* § 8–74–107(6), C.R.S.2012; *Colo. Div. of Emp't & Training v. Parkview Episcopal Hosp.*, 725 P.2d 787, 790 (Colo.1986).

¶ 10 We do not disturb findings of a hearing officer that are supported by substantial evidence or reasonable inferences drawn from that evidence. *See* § 8–74–107(4), C.R.S.2012; *Tilley v. Indus. Claim Appeals Office*, 924 P.2d 1173, 1177 (Colo.App.1996).

## III. Applicable Statutes

¶ 11 Section 8–73–108(5)(e) (XXII) provides that a claimant is not entitled to unemployment benefits if he or she quits "under conditions involving personal reasons, unless the personal reasons were compelling pursuant to other provisions of [section 8–73–108(4) ]." Section 8–73–108(4) requires a full award of benefits when an employee is separated for certain reasons and related conditions of employment.

¶ 12 The application of sections 8–73–108(4)(*o*) and 108(4)(c) is at issue here. Section 8–73–108(4)(*o*) mandates an award of benefits to an employee who is separated from employment when the Division determines that the employee quit "because of personal harassment *by the employer* not related to the performance of the job" (emphasis added). Section 8–73–108(4)(c) requires an award of benefits when the Division determines that a person has been separated from a job as the result of unsatisfactory or hazardous working conditions.

## IV. Personal Harassment by Employer

¶ 13 We conclude the Panel erred when it awarded benefits to claimant under section 8–73–108(4)(*o*). Under section 8–73–108(4)(*o*), when the Division of Employment and Training determines that an employee quit "because of personal harassment *by the employer* not related to the performance of the job," the Division must award benefits to the employee (emphasis added).

### A. Coworker Was Not Claimant's Employer

#### 1. Statutory Interpretation

¶ 14 Statutory interpretation is a question of law that we review de novo. *Clyncke v. Waneka*, 157 P.3d 1072, 1076 (Colo.2007). Our primary task when construing a statute is to give effect to the intent of the General Assembly. *Campbell v. Indus. Claim Appeals Office*, 97 P.3d 204, 207 (Colo.App.

2003). To determine legislative intent, we interpret statutory terms in accordance with their plain and ordinary meaning. *Id.* Accordingly, we must give consistent, harmonious, and sensible effect to all parts of the statute and avoid an interpretation or construction that would render any language meaningless. *Id.*; *Well Augmentation Subdistrict v. City of Aurora*, 221 P.3d 399, 420 (Colo.2009). In addition, we do not ascribe a meaning that would lead to an illogical or absurd result. *Frazier v. People*, 90 P.3d 807, 811 (Colo.2004).

### 2. Statutory Definition of Employer

■ ¶ 15 Because section 8–73–108, C.R.S. 2012, is part of the Colorado Employment Security Act, Articles 70 through 82 of Title 8, we must consider its meaning in the context of the entire Act. Section 8–70–113, C.R.S.2012, defines "employer" to be an "employing unit" that meets specified criteria. Claimant's coworker is not an employer under any of the statutory criteria.

### 3. Statutory Use of Different Terms

¶ 16 The supreme court has held that " 'the use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings.' " *Colo. Div. of Emp't & Training v. Accord Human Res., Inc.*, 270 P.3d 985, 989 (Colo.2012) (quoting *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo.2008)).

¶ 17 In section 8–73–108, the General Assembly used a variety of terms to refer to different categories of people or organizations, including "employer," "employer's duly authorized representative," "worker," "supervisor," "fellow worker," "coworker," and "customer." *See, e.g.*, §§ 8–73–108(3)(c), C.R.S.2012 (coworker); 8–73–108(4)(b)(I), C.R.S.2012 (employer), 8–73–108(4)(d), C.R.S. 2012 (worker), 8–73–108(5)(e)(II), C.R.S.2012 (supervisor), 8–73–108(5)(e)(VI), C.R.S.2012 (employer or an employer's duly authorized representative), 8–73–108(5)(e)(XIV), C.R.S. 2012 (supervisor and fellow worker).

¶ 18 We conclude that the General Assembly's use of different terms to refer to an employer and a coworker signals its intent that these terms have different meanings.

*See Accord Human Res.*, 270 P.3d at 989. Moreover, the Panel's conclusion that the term "employer" includes coworkers renders the latter term meaningless.

### 4. Illogical and Absurd Result

¶ 19 Equating the terms "employer" and "coworker" leads to an illogical and absurd result. For instance, section 8–73–108(4)(b)(I), which allows for an award of benefits when a worker is separated from employment because of health issues, conditions the award in certain circumstances on the worker informing the "employer in writing" of the health issues. Under the Panel's interpretation of the term "employer," notification to a coworker would be sufficient. *See Vance v. Ball State Univ.*, —— U.S. ——, 133 S.Ct. 2434, 2439, 186 L.Ed.2d 565 (2013) (concluding that, for purposes of Title VII, an employee is a "supervisor" if he or she is empowered by the employer to take tangible employment actions against the claimant).

### 5. Conclusion

¶ 20 We conclude that the Panel erred as a matter of law when it defined "employer" to include claimant's coworker. The Panel's definition is inconsistent with the meaning of employer used throughout section 8–73–108 and the statutory definition in section 8–70–113. It renders the word "employer" meaningless and leads to an absurd result. Thus, we conclude that "personal harassment by the employer" does not include the actions of claimant's coworker.

### B. Employer's Conduct

■ ¶ 21 We also conclude that, for purposes of section 8–73– 108 (5)(e) (XXII), there is no evidence of personal harassment by employer. It is undisputed that the coworker was not in a supervisory or management position with employer. In addition, the hearing officer did not find that employer condoned or otherwise failed to take action with regard to the coworker's conduct. Instead, the hearing officer found that employer took the harassment seriously and acted reasonably in response.

¶ 22 The supreme court's decision in *Hewlett* does not require that claimant here be awarded benefits. In *Hewlett*, the court held that an employee who quits her job because of personal harassment is not disqualified from receiving benefits under section 8–73–108(5)(e)(XXII). However, unlike the circumstances here, the court did not address whether harassment solely by a coworker was sufficient for an award of benefits. Rather, there was evidence that the claimant in *Hewlett* was subject to harassment by both her supervisor and coworkers. Thus, *Hewlett* is distinguishable from this case.

¶ 23 Because there is no finding that employer fostered or condoned the coworker's actions, we conclude that the Panel erred when it concluded that claimant quit "because of personal harassment by the employer not related to the performance of the job" and was entitled to benefits under section 8–73–108(4)(*o*). *See Survey Solutions, Inc. v. Indus. Claim Appeals Office*, 956 P.2d 1275, 1277 (Colo.App.1998).

## V. Unsatisfactory Working Conditions

¶ 24 We also conclude that the Panel erred as a matter of law when it ruled that claimant was entitled to an award of benefits based on unsatisfactory working conditions under section 8–73–108(4)(c).

### A. Section 8–7–108(4)(c)

¶ 25 Under section 8–73–108(4)(c), if the Division of Employment and Training determines that a person has been separated from a job as the result of unsatisfactory or hazardous working conditions, it must award that person full benefits. The Division must apply an objective standard when determining whether working conditions are unsatisfactory or hazardous. *See Rodco Sys., Inc. v. Indus. Claim Appeals Office*, 981 P.2d 699, 701–02 (Colo.App.1999); *Survey Solutions, Inc.* (applying objective standard in determining entitlement issues under another statutory subsection).

¶ 26 When determining whether working conditions are objectively unsatisfactory, the Division must consider:

- the degree of risk involved to the worker's health, safety, and morals;
- the worker's physical fitness and prior training;
- the worker's experience and prior earnings;
- the distance of the work from the worker's residence; and
- the working conditions of workers engaged in the same or similar work for the same and other employers in the locality.

§ 8–73–108(4)(c). In each of these considerations, it is implicit that the unsatisfactory working conditions existed at the time of separation and were likely to continue to exist.

### B. Panel Erred

¶ 27 We conclude that the Panel erred when it concluded that claimant's working conditions were unsatisfactory because "a reasonable person would find the actions of the coworker to be so vexing, troubling, and annoying as to warrant quitting."

¶ 28 The hearing officer found that (1) employer took the complaint seriously and acted reasonably; (2) after October 14, 2011, the only communication from the coworker to claimant occurred outside of the workplace; (3) employer did not have control over events outside of work; (4) employer was not obligated to protect claimant outside of work; and (5) claimant's supervisor authorized him to take a paid leave of absence and excused him from attending meetings at which the coworker would be present until the supervisor completed his investigation. The hearing officer also found that claimant (1) reasoned that because employer had not fully resolved the matter in forty-eight hours, it was not taking his complaint seriously, and (2) quit because he believed employer did not act quickly enough to stop the coworker from harassing him. The hearing officer ultimately concluded that it was not reasonable for claimant to quit without allowing the investigative process to be completed and that claimant quit for personal reasons. Because the hearing officer's findings are supported by substantial evidence in the record, they are binding on review by the Panel. *See Tilley*, 924 P.2d at 1177.

¶ 29 The Panel concluded that "the record [ ] clearly supports the finding that the claimant was being personally harassed by a coworker that was not related to his job performance and this was a factor in his decision to quit." Relying on *Hewlett,* the Panel concluded that an award was warranted under section 8–73–108(4)(c) [1], saying it was persuaded that "a reasonable person would find the actions of the coworker to be so vexing, troubling, and annoying as to warrant quitting." This conclusion was contrary to the hearing officer's finding that it was not reasonable for claimant to have quit without allowing employer to complete its investigation.

¶ 30 We conclude that the Panel erred. When claimant quit, he was on paid leave and was not at risk of encountering the coworker at his place of employment. Thus, the working conditions upon which the Panel relied did not exist at the time claimant decided to quit. In addition, employer told claimant it would investigate the matter and schedule a meeting with the coworker. Claimant quit on a Saturday, before his supervisor would have met with the coworker. In substance, the hearing officer concluded that a reasonable person would have waited until employer's investigation was completed. The Panel's decision is silent as to whether a reasonable person would have quit before employer completed its investigation.

¶ 31 We conclude that, when determining whether working conditions are unsatisfactory, the Division must consider the working conditions that existed when the separation occurred and the extent to which the conditions were likely to continue.

¶ 32 Accordingly, we conclude that the Panel erred.

### VI.  Applicability of Section 8–73–108(5)(e) (XXII)

¶ 33 Because employer had indefinitely removed claimant from the adverse working conditions and claimant did not wait to learn whether the adverse conditions would be eliminated, we conclude that claimant was not entitled to benefits under sections 8–73–

108(4)(c), and, thus, was disqualified from receiving benefits under section 8–73–108(5)(e) (XXII). *See Cole v. Indus. Claim Appeals Office,* 964 P.2d 617, 619 (Colo.App. 1998).

¶ 34 The order is set aside.

Judge MILLER and Judge FOX concur.

---

**1.**  The Panel's decision mistakenly referred to section 8-73-108(4)(*o*).